**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Inscription Canyon Ranch Sanitary District, <br><br> Plaintiff, <br><br> v. <br><br> American Alternative Insurance Corp., <br><br> Defendant. | No. CV-12-8019-PCT-SMM <br><br> **MEMORANDUM OF DECISION AND ORDER** |

Before the Court are Defendant's Motion for Summary Judgment (Doc. 39), and Plaintiff's Motion for Partial Summary Judgment (Doc. 41). Both motions are fully briefed. (Docs. 40, 42, 43, 46, 47, 48, 49, 52, 53, 54, 55.) After considering the parties' briefing, and having determined that oral argument is unnecessary[1], the Court will grant Defendant's Motion in part and deny in part, and deny Plaintiff's Motion.

## BACKGROUND

Plaintiff Inscription Canyon Ranch Sanitary District ("the District") is a political subdivision of Arizona. The District filed this claim against Defendant American Alternative Insurance Corporation, alleging that Defendant breached its insurance contract with the District by failing to defend it in a state-court suit, <u>Harvard Simon, et al. v. Inscription</u>

---

[1] The parties' request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. <u>See</u> <u>Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.</u>, 933 F.2d 724, 729 (9th Cir. 1991).

Canyon Ranch Sanitary District, et al. (P1300CV20100036) ("the first suit").

The District was insured under a Management Liability Policy issued by Defendant with effective dates of February 7, 2009 through February 7, 2010. (Doc. 40 ¶ 1.) The policy provided liability limits in the amount of $1,000,000 for each "wrongful act" under Coverage A, and $5,000 for "defense expenses" for each action for "injunctive relief" under Coverage B. (Id. ¶ 2.) The relevant portions of the policy read as follows:

> **COVERAGE A. INSURING AGREEMENT - LIABILITY FOR MONETARY DAMAGES**
> 1. We will pay those sums that the insured becomes legally obligated to pay as monetary damages arising out of a "wrongful act" . . . . We will have the right and duty to defend any "suit" seeking those damages. . . .
> . . .
> **COVERAGE B. INSURING AGREEMENT – DEFENSE EXPENSE FOR INJUNCTIVE RELIEF**
> 1. We will pay those reasonable sums the insured incurs as "defense expense" to defend against an action for "injunctive relief" because of a "wrongful act" . . . . However:
>   a. The amount we will pay for "defense expenses" is limited as described in **Section IV. Limits of Insurance**; and
>   b. We have no obligation to arrange or provide the defense for any action for "injunctive relief." No other obligation or liability to pay sums or perform acts or services is covered.
> . . .
> **SECTION II. EXCLUSIONS**
> With respect to Coverage A and/or Coverage B, this insurance does not apply to:
> . . .
> 4. Attorneys Fees and Court Costs
> Any award of costs or fees which arises out of an action for "injunctive relief."
> . . .
> 16. Fines
> Fines, penalties and taxes, including those imposed by the Internal Revenue Service code or any similar state or local code.
> . . .
> **SECTION VII. DEFINITIONS**
> . . .
> 9. "Injunctive relief" means equitable relief sought through the demand for the issuance of a permanent, preliminary or temporary injunction, restraining order, or similar prohibitive writ against, or order for specific performance by, an insured provided such action is filed during the policy period.
> . . .
> 15. "Wrongful act" means any actual or alleged error, act,

1
2
3
> omission, neglect, misfeasance, nonfeasance, or breach of duty, including violation of any civil rights law, by any insured in discharge of their duties individually or collectively that results directly but unexpectedly and unintentionally in damages to others.

(Doc. 40-1 at 2-16.)

The Verified First Amended Complaint in the first suit was filed in the Superior Court of Arizona, Yavapai County, on January 29, 2010. (Doc. 40-2 at 2.) The plaintiffs in this lawsuit were several LLCs which objected to the District's actions with regard to an existing wastewater treatment plant, the District's plans regarding construction of a new treatment plant, and the District's passage of a moratorium on new sewer connections in the district. (Id. at 2-13.) The plaintiffs in the first suit made three claims: Count One, "Violation of the Open Meeting Law"; Count Two, "Special Action"; and Count Three, "Declaratory Judgment." (Id. at 14-22.) In their prayer for relief, the plaintiffs requested:

> 1. An order from the Court imposing civil penalties not to exceed five hundred dollars each against the District . . . .
> 2. An order from the Court removing [several District board members] from office.
> 3. An order from the Court declaring that the Board's adoption of Resolution No. 2009-01 is null and void and cannot be ratified.
> 4. An order from the Court accepting jurisdiction in this special action.
> 5. An order from the Court that the District and its Board acted arbitrarily and capriciously and abused their discretion by attempting to adopt Resolution No. 2009-01.
> 6. A declaratory judgment from the Court that Defendants acted arbitrarily and capriciously by adopting Resolution No. 2009-01 and thus the adoption is an abuse of discretion.
> 7. An award of the reasonable attorneys' fees and costs incurred in bringing this action.
> 8. Any other relief this Court deems just or proper.

(Id. at 22.)

On March 26, 2010, the litigation was reported to Mr. Thomas Brumbaugh at Glatfelter Claims Management, Inc. ("Glatfelter"), Defendant's third-party claims administrator. (Doc. 40 ¶ 9.) Mr. Brumbaugh is a Liability Specialist at Glatfelter. (Id. ¶ 10.) After reviewing the lawsuit, Mr. Brumbaugh concluded that there was no coverage under Coverage A, and applied the Defense Expense For Injunctive Relief pursuant to Coverage B. (Id. ¶ 13.) Also on March 26, Mr. Brumbaugh was aware of a Notice of Claim

1  letter which indicated that one of the plaintiffs of the lawsuit threatened to bring a damages
2  claim against the District in a separate action. (Id. ¶ 15.) Mr. Brumbaugh made note of the
3  potential for future litigation and opened a separate claim file to handle that potential
4  damages action. (Id. ¶ 16.)

5        On November 17, 2010, a second action was filed against the District in Yavapai
6  County Superior Court, by one of the plaintiffs in the first action, this time seeking monetary
7  damages arising from the District's moratorium ("the second suit"). (Id. ¶ 29; Doc. 40-9.)
8  Glatfelter notified the District that it would provide a defense to the second suit pursuant to
9  a reservation of rights. (Id. ¶ 30.) Glatfelter provided a defense for the second action up
10 until the case settled, when Glatfelter paid $1,000,000 under the policy to settle all pending
11 claims against the district, including the claims in both the first and second lawsuits. (Id. ¶
12 31.)

13       The District thereafter initiated this action against Defendant for Defendant's decision
14 not to defend the District in the first lawsuit. (Doc. 5.) The District's First Amended
15 Complaint makes three claims: (1) seeking a declaratory judgment that Defendant was
16 obligated under the policy to defend the District in the first suit; (2) alleging breach of
17 contract; and (3) alleging breach of the duty of good faith and fair dealing. (Id.) The District
18 seeks $615,782.86 in damages, representing the amount the District incurred in attorneys'
19 fees and costs in defense of the first lawsuit, minus the $5,000 Defendant previously paid
20 under the policy. (Doc. 43.)

21       The District now moves for partial summary judgment on its breach of contract claim.
22 (Doc. 41.) Defendant moves for summary judgment on all three of the District's claims.
23 (Doc. 39.)

24                                **LEGAL STANDARD**
25    **I.**    **Motion for Summary Judgment**
26       A court must grant summary judgment if the pleadings and supporting documents,
27 viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine
28 dispute as to any material fact and the movant is entitled to judgment as a matter of law."

- 4 -

1  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.
2  Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines
3  which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also
4  Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit
5  under the governing law will properly preclude the entry of summary judgment." Anderson,
6  477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must be "such that
7  a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d
8  at 1130.

9         A principal purpose of summary judgment is "to isolate and dispose of factually
10 unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate
11 against a party who "fails to make a showing sufficient to establish the existence of an
12 element essential to that party's case, and on which that party will bear the burden of proof
13 at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.
14 1994).  The moving party need not disprove matters on which the opponent has the burden
15 of proof at trial.  See Celotex, 477 U.S. at 323-24.  The party opposing summary judgment
16 need not produce evidence "in a form that would be admissible at trial in order to avoid
17 summary judgment." Id. at 324.  However, the nonmovant must set out specific facts
18 showing a genuine dispute for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
19 Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,
20 1049 (9th Cir. 1995).

21     **II. Breach of Contract**

22        Because jurisdiction here is based on diversity of citizenship, the Court applies the
23 substantive law of Arizona to resolve the insurance coverage issues.  See Erie v. Tompkins,
24 304 U.S. 64, 78 (1938).  In an action for breach of contract, the plaintiff has the burden of
25 proving "the existence of a contract, breach of the contract, and resulting damages."
26 Chartone, Inc. v. Bernini, 207 Ariz. 162, 170, 83 P.3d 1103, 1112 (App. 2004) (citing
27 Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab., 5 Ariz.App. 48, 423 P.2d 124 (1976)).
28        Provisions of insurance contracts should be construed according to their plain and

ordinary meaning. National Bank v. St. Paul Fire & Marine Ins. Co., 193 Ariz. 581, 584, 975 P.2d 711, 714 (App. 1999). The interpretation of an insurance contract is a question of law, as is the question of whether the contract's terms are ambiguous. Id. In Arizona, courts must construe a clause which is subject to differing interpretations by "examining the language of the clause, public policy considerations, and the purpose of the transaction as a whole." State Farm Mut. Auto. Ins. Co. v. Wilson, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989). Unambiguous provisions must be given effect as written. Benevides v. Ariz. Prop. & Cas. Ins. Guar. Fund, 184 Ariz. 610, 613, 911 P.2d 616, 619 (1995).

An insurance policy is ambiguous if there is more than one reasonable interpretation of its terms. Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co., 225 Ariz. 194, 200, 236 P.3d 421, 427 (App. 2010). Arizona courts may consider extrinsic evidence to identify and resolve ambiguities in an insurance policy. Lennar Corp. v. Transamerica Ins., Co., 227 Ariz. 238, 244, 256 P.3d 635, 641 (App. 2010). However, "neither language nor apparent ambiguity alone is dispositive." Wilson, 162 Ariz. at 257, 782 P.2d at 733. "If a clause appears ambiguous, [the court] interpret[s] it by looking to legislative goals, social policy, and the transaction as a whole. If an ambiguity remains after considering these factors, [the court] construe[s] it against the insurer." First Am. Title Ins. Co. v. Action Acquisitions, LLC, 218 Ariz. 394, 397, 187 P.3d 1107, 1110 (2008) (citations omitted); see also Wilshire Ins. Co. v. S.A., 224 Ariz. 97, 99, 227 P.3d 504, 506 (App. 2010) ("We construe the clause against the insurer, however, if ambiguity remains after we apply those interpretive guides.").

### A. Duty to Defend

Under Arizona law, an insurer has a duty to "defend the insured against any claim 'potentially covered by the policy.'" Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcon. Ins. Co., 218 Ariz. 13, 19, 178 P.3d 485, 491 (App. 2008). The language of the insurance policy controls the scope and extent of the insurer's duty to defend. Cal. Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 185 Ariz. 165, 168, 913 P.2d 505, 508 (App. 1996). The duty to defend arises "at the earliest stages of the litigation and generally exists

- 6 -

regardless of whether the insured is ultimately found liable." Regal Homes, Inc. v. CNA Ins., 217 Ariz. 159, 164, 171 P.3d 610, 615 (App. 2007). The duty to defend focuses on the facts alleged rather than the legal characterization of the causes of actions alleged in the complaint against the insured. Kepner v. Western Fire Ins. Co., 109 Ariz. 329, 331, 509 P.2d 222, 224 (1973).

### III. Bad Faith

An insurance contract differs from ordinary commercial contracts in that "'implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.'" Zilisch v. State Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (quoting Rawlings v. Apodaca, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986)). The insurer is obligated to conduct a prompt and adequate investigation, to act reasonably in evaluating the insured's claim, and to promptly pay a legitimate claim. Zilisch, 196 Ariz. at 238, 995 P.2d at 280.

An insurer commits the tort of bad faith by intentionally and without reasonable basis denying, failing to process, or failing to pay a claim. Noble v. National Am. Life Ins. Co., 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). To show bad faith on the part of the insurer, the insured must show: (1) that the insurer acted unreasonably toward the insured; and (2) that the insurer "acted *knowing* that it was acting unreasonably *or* acted with such reckless disregard that such knowledge may be imputed to it." Trus Joist Corp. v. Safeco Ins. Co., 153 Ariz. 95, 104, 735 P.2d 125, 134 (App. 1986) (emphasis in original).

An insurer "may challenge claims which are fairly debatable," but "its belief in fair debatability 'is a question of fact to be determined by the jury.'" Zilisch, 196 Ariz. at 280, 995 P.2d at 279 (citing Sparks, 132 Ariz. at 529, 647 P.2d at 1127) (internal citation omitted). Furthermore, "breach of an express covenant is not a necessary prerequisite to an action for bad faith." Deese v. State Farm Mut. Auto. Ins. Co., 172 Ariz. 504, 509, 838 P.2d 1265, 1270 (1992). Thus, a plaintiff may prevail on a bad faith claim even where they may fail on a breach of contract claim. Id.

**DISCUSSION**

**I.     Declaratory Judgment and Breach of Contract**

The District moves for partial summary judgment, arguing that there is no material issue of fact and that it is entitled as a matter of law to a judgment that Defendant committed breach of contract by failing to defend the District in the first lawsuit, and that the District is therefore entitled to damages in the amount of the attorney fees and costs the District incurred in its defense of that first suit. (Doc. 41.) Defendant moves for summary judgment on all of Plaintiff's claims, arguing that it had no duty to defendant Plaintiff in the underlying litigation, and that Plaintiff's claim for bad faith fails as a matter of law. (Doc. 39.)

At the crux of both motions is the issue of whether the first lawsuit made a claim against the District for "monetary damages" triggering Coverage A, or instead was only an action for injunctive relief triggering Coverage B. The District argues that the first lawsuit did indeed make a claim for monetary damages, in that the complaint in that suit prayed for an award of attorney fees and costs. According to the District, the claim for attorney fees in the first lawsuit qualified as a claim for monetary damages arising out of a wrongful act. Therefore, the District says, Defendant was obligated under Coverage A to defend the entire first lawsuit.

Defendant argues in response that the first suit did not make a claim for monetary damages, and thus there was no coverage under Coverage A of the policy. Defendant contends that while the policy provides coverage under Coverage A for attorneys fees when combined with other claims for monetary damages arising out of wrongful acts, the policy provides no such coverage for claims of attorneys fees standing alone. Thus, because the first suit alleged only claims for injunctive relief and accompanying attorney fees, there was no Coverage A, and Defendant rightly afforded only Coverage B under the policy.

In Arizona, "[t]he most common meaning of damages is compensation for actual injury." Downs v. Sulphur Springs Valley Ele. C. Coop., Inc., 80 Ariz. 286, 290, 297 P.2d 339, 343 (1956). "Damages" is also defined as "indemnity recoverable by a person who has sustained an injury, either to his person, property, or relative rights," including "sums

- 8 -

recoverable in an action for money had and received, . . . as well as compensation for a tort or breach of contract." Rice v. Sanger Bros., 27 Ariz. 15, 22, 229 P. 397, 399-400 (1924). Damages are "commonly defined as 'the estimated money equivalent for detriment or injury sustained.'" Desert Mountain Props. Ltd. P'ship, 225 Ariz. at 202, 236 P.3d at 429 (quoting Random House Webster's Unabridged Dictionary 504 (Deluxe 2d ed. 2001).

The Court agrees with Defendant that the first suit did not make a claim for monetary damages arising from a wrongful act. The first suit made claims only for injunctive relief and associated attorney fees and costs. The wrongful act attributed to the District in the first suit was the District's actions with regard to the sanitation plant, but the suit did not allege that monetary damages had arisen directly from the wrongful act. Instead, the plaintiffs in the first suit sought only injunctive relief as their substantive claims.

The Court finds that the policy language is clear and unambiguous, and that the plain meaning of the term "damages" should be interpreted as it is commonly defined, as "'the estimated money equivalent for detriment or injury sustained.'" See Desert Mountain Props. Ltd. P'ship, 225 Ariz. at 202, 236 P.3d at 429. The first suit's claim for attorney fees was not a claim for the money equivalent of a detriment or injury sustained by plaintiffs in that suit. Rather, the claim for attorney fees was incidental to and dependent on the underlying plaintiffs' decision to file their suit for injunctive relief against the District. Therefore, the first suit made no claim for "damages" under the policy, and Defendant properly concluded that there was no coverage under Coverage A of the policy.

The District further argues, however, that Defendant was obligated to defend the District in the first suit because of the **potential** for coverage under Coverage A of the policy. According to the District, the notice of claim letter sent by plaintiffs in the first suit operated to alert Defendant to the possibility of monetary damages in the first suit and therefore triggered Defendant's duty to defend. See Pueblo Santa Fe Townhomes Owners' Ass'n., 218 Ariz. at 19, 178 P.3d at 491 (insurer has a duty to "defend the insured against any claim 'potentially covered by the policy'"); Kepner, 109 Ariz. at 331, 509 P.2d at 224 (duty to defend focuses on the facts alleged rather than the legal characterization of the causes of

1  actions alleged in the complaint against the insured).

2  In support of this argument, the District cites to City of Glendale v. Nat'l Union Fire
3  Ins. Co. et al., a recent case from this District. No. CV 12-380, 2013 WL 1296418 (D.Ariz.
4  March 29, 2013). The court in that case considered circumstances similar to those here:
5  there, the insurer received a notice of claim letter which was tendered to the insurer along
6  with the original complaint in the underlying litigation. Id. at *1. The letter asserted that the
7  underlying plaintiffs had a claim for $15 million in lost profits due to the insured's conduct.
8  Id. The underlying plaintiffs shortly thereafter filed an amended complaint asserting that
9  claim for compensatory damages. Id.

10  In the action for breach of contract before the court, the insurer disputed whether the
11  original complaint in the underlying suit had made a claim for damages sufficient to trigger
12  coverage under the insurance policy. Id. at *17. The court found that the notice of claim
13  letter established the potential for coverage under the policy because it specifically
14  referenced the original complaint and asserted the underlying plaintiffs' intent to assert a
15  claim for the damages at issue. Id. at *18.

16  The Court disagrees with the District that City of Glendale is applicable here, and
17  finds that the case is distinguishable and uninformative as to the argument at issue here. In
18  that case, the underlying plaintiffs' notice of claim letter referenced the original complaint
19  and specifically asserted that the plaintiffs had an additional claim for monetary damages as
20  part of that same complaint. Then, the underlying plaintiffs filed an amended complaint
21  adding those monetary damage claims. This is quite unlike the case here, where the
22  underlying plaintiffs in the first suit asserted in their notice of claim letter only that one of
23  the underlying plaintiffs threatened to bring a separate, additional lawsuit asserting monetary
24  damages.

25  Here, the notice of claim letter in this case did not operate to trigger Defendant's
26  obligation to defend under the "potential liability" theory. As Defendant points out, the
27  notice of claim letter sent by plaintiffs in the first suit only alerted Defendant to the potential
28  for monetary damages in a future, separate action. Upon considering this letter, Defendant's

claims adjuster Mr. Brumbaugh noted the possibility of future litigation and established a separate claims file in case such a suit was filed in the future. Indeed, this is what in fact occurred, and upon receiving the District's tender for defense of that second suit, Defendant provided defense coverage under the policy and eventually paid $1,000,000 to settle all claims against the District in both suits. The notice of claim letter did not indicate that a potential monetary damages claim would be made against the District in the first suit, and thus Defendant was under no obligation to defend the first suit under the policy's Coverage A.

Finally, Plaintiff argues that Defendant's were obligated to afford defense under Coverage A of the policy due to the first suit's claim for "other expenses" pursuant to A.R.S. § 12-348. (Doc. 46 at 5-6.) That statute provides for the award of fees and other expenses against the state or a city, town or county, which may include the reasonable expenses of expert witnesses, and "the reasonable costs of any study, analysis, engineering reports, test or project which the court finds to be directly related to and necessary for the presentation of the party's case[.]" A.R.S. § 12-348(I)(1).

The Court finds that here as well, however, the underlying suit did not make a claim for monetary damages. The first lawsuit's claim for "other expenses" pursuant to A.R.S. § 12-348 was not a claim for damages arising from a covered injury, but instead, like the claim for attorney fees, a claim incidental to the claim for injunctive relief. The claim for these other expenses was dependent on and arose from the underlying plaintiffs' decision to file the suit for injunctive relief; the claim for these other expenses did not directly arise from any action taken by the District. As such, the claim for other expenses pursuant to the statute was not a claim for monetary damages, and as such Defendant properly concluded that Coverage A of the policy did not apply.

For these reasons, the Court finds that the first lawsuit made no claim for monetary damages, and thus Defendant had no duty to defend that suit under Coverage A of the policy. Accordingly, the Court will grant Defendant's motion for summary judgment against the District's claims for declaratory judgment and breach of contract. As a consequence of the

Court's grant of Defendant's motion as against these two claims, the Court shall necessarily deny the District's motion for partial summary judgment on its claim for breach of contract.

## II.   Breach of the Covenant of Good Faith and Fair Dealing

Defendants argue that the District's bad faith claim is also subject to summary judgment. (Doc. 39 at 15.) Defendants contend that the District has failed to assert sufficient facts in support of the bad faith claim to withstand summary judgment, and characterize Mr. Brumbaugh's handling of the claim as reasonable. The District responds by characterizing Mr. Brumbaugh's investigation of the claim as slipshod, perfunctory, and unreasonable toward the District. (Doc. 46 at 13.)

The Court notes that as discussed in Section I above, the Court finds that Defendant properly concluded that Coverage A of the policy did not apply to trigger coverage for the first underlying suit. However, a plaintiff may prevail on a bad faith claim even where they may fail on a breach of contract claim. See Deese, 172 Ariz. at 509, 838 P.2d at 1270.

As the Court in Lennar Corp. v. Transamerica Ins. Co. noted, "[w]hether the reasonableness of an insurers coverage position may be determined as a matter of law depends on the nature of the dispute and other factors, including whether extraneous evidence bears on the meaning of the contested policy language." 227 Ariz. 238, 244, 256 P.3d 635, 641 (App. 2011). "'[A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.'" Id. at 246, 256 P.3d at 643 (quoting Egan v. Mut. of Omaha Ins. Co., 620 P.2d 141 (Cal. 1979). Furthermore, expert testimony is relevant and admissible to prove bad faith. See Zilisch, 196 Ariz. at 238, 995 P.2d at 280. Finally, the Court is mindful that:

> while fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.

Id.

Here, the District alleges that Defendant committed bad faith in adjusting the claim by acting unreasonably in regards to prompt and adequate investigation, evaluation, and

1  processing of the claim, and that Defendant knew that its conduct was unreasonable. In
2  support of this interpretation of Defendant's claims handling process, the District presents
3  the affidavit of its expert witness, Mr. Gene Irizarry. (Doc. 49-1 at 42.)

4  Mr. Irizarry is an insurance consultant with many years experience in the insurance
5  industry as a claims handler and a consultant. (Id. at 43.) Mr. Irizarry, having reviewed the
6  claims adjustment process in this case, offers his opinion that Defendant violated clearly
7  applicable industry standards for claims handling in this case by failing to consider the duties
8  it owed the District equally with its own interests. (Id. at 52.) Mr. Irizarry bases this opinion
9  on his analysis of Mr. Brumbaugh's handling of the claim and the interactions between Mr.
10 Brumbaugh and the District's attorney Mr. Nelson, as applied to Mr. Irizarry's experience
11 in the business and his opinion regarding the prevailing industry standard for good faith and
12 fair-dealing. (Id. at 48-52.)

13 The Court notes that Defendant disputes these facts, and the Court does not weigh the
14 sufficiency of the evidence. After taking account of all disputed and undisputed facts, and
15 making all reasonable inferences from those facts in favor of the District, however, the Court
16 finds that the District has met its burden of raising a genuine dispute of material fact suitable
17 for trial on its claim of bad faith – the District offers expert witness testimony which raises
18 as a factual issue for the jury the question of whether Defendant denied coverage to the
19 District "without thoroughly investigating the foundation for its denial." Thus, because the
20 jury must decide this questions of whether Defendant's denial was objectively unreasonable
21 and whether Defendant knowingly acted unreasonably toward the District, and because the
22 District has supported their claim with some measure of reasonably competent evidence, this
23 Court must deny Defendants' motion for summary judgment as to the bad faith claim.

## CONCLUSION

25 Accordingly, for the foregoing reasons,

26 **IT IS HEREBY ORDERED granting in part and denying in part** the Motion for
27 Summary Judgment. (Doc. 39.) The Court grants the motion for summary judgment as
28 against the District's claim for declaratory judgment and claim for breach of contract. The

1 Court denies the motion as against the District's claim for breach of the covenant of good
2 faith and fair dealing.

3       **IT IS FURTHER ORDERED denying** the motion for partial summary judgment.
4 (Doc. 41.)

5       **IT IS FURTHER ORDERED** setting the Final Pretrial Conference for **November
6 6, 2013 at 2:00 p.m.** This matter appearing ready for trial, a Final Pretrial Conference shall
7 be held in Courtroom 605, Sandra Day O'Connor U.S. Federal Courthouse, 401 W.
8 Washington St., Phoenix, Arizona 85003. The attorneys who will be responsible for the trial
9 of the case shall attend the Final Pretrial Conference. Counsel shall bring their calendars so
10 that trial scheduling can be discussed.

11       **IT IS FURTHER ORDERED** that, if this case shall be tried to a jury, the attorneys
12 who will be responsible for the trial of the lawsuit shall prepare and sign a Proposed Pretrial
13 Order and submit it to the Court on **Friday, October 11, 2013.**

14       **IT IS FURTHER ORDERED** that the content of the Proposed Pretrial Order shall
15 include, but not be limited to, that prescribed in the Form of Pretrial Order attached hereto.
16 Statements made shall not be in the form of a question, but should be a concise narrative
17 statement of each party's contention as to each uncontested and contested issue.

18       **IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 37(c) that
19 the Court will not allow the parties to offer any exhibits, witnesses, or other information that
20 were not previously disclosed in accordance with the provisions of this Order and/or the
21 Federal Rules of Civil Procedure and/or not listed in the Proposed Pretrial Order, except for
22 good cause.

23       **IT IS FURTHER ORDERED** directing the parties to exchange drafts of the
24 Proposed Pretrial Order **no later than seven (7) days before the submission deadline**.

25       **IT IS FURTHER ORDERED** that the parties shall file and serve all motions in
26 limine no later than **Friday, October 11, 2013.** Each motion in limine shall include the legal
27 basis supporting it. Responses to motions in limine are due **Friday, October 18, 2013.** No
28 replies will be permitted. The attorneys for all parties shall come to the Final Pretrial

Conference prepared to address the merits of all such motions.

**IT IS FURTHER ORDERED** directing the parties to complete the following tasks by the time of the filing of the Proposed Pretrial Order if they intend to try the case before a jury:

(1) The parties shall <u>jointly</u> file a description of the case to be read to the jury.

(2) The parties shall <u>jointly</u> file a proposed set of voir dire questions. The voir dire questions shall be drafted in a neutral manner. To the extent possible, the parties shall stipulate to the proposed voir dire questions. If the parties have any disagreement about a particular question, the party or parties objecting shall state the reason for their objection below the question.

(3) The parties shall file a proposed set of <u>stipulated</u> jury instructions. The instructions shall be accompanied by citations to legal authority. If a party believes that a proposed instruction is a correct statement of the law, but the facts will not warrant the giving of the instructions, the party shall so state. The party who believes that the facts will not warrant the particular instruction shall provide an alternative instruction with appropriate citations to legal authority.

(4) Each party shall submit a form of verdict to be given to the jury at the end of the trial.

**IT IS FURTHER ORDERED** directing the parties to submit their proposed joint statement of the case, joint voir dire questions, stipulated jury instructions, and verdict forms.

**IT IS FURTHER ORDERED** that if the case will be tried to the Court, rather than to a jury, <u>instead of</u> filing a Proposed Pretrial Order, each party shall submit proposed findings of fact and conclusions of law by the same date the Proposed Pretrial Order is due.

**IT IS FURTHER ORDERED** that the parties shall keep the Court apprised of the possibility of settlement and should settlement be reached, the parties shall file a Notice of Settlement with the Clerk of the Court.

**IT IS FURTHER ORDERED** that this Court views compliance with the provisions of this Order as critical to its case management responsibilities and the responsibilities of the

parties under Rule 1 of the Federal Rules of Civil Procedure.

DATED this 13th day of September, 2013.

_____
Stephen M. McNamee
Senior United States District Judge